# UNITED STATE DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**ALEXANDER STROSS,**
*Plaintiff,*

**v.**

Case No. 1:15-CV-00223-SS

**REDFIN CORPORATION,**
*Defendant/Counterclaimant.*

---

## NATIONAL ASSOCIATION OF REALTORS®' AMICUS CURIAE BRIEF IN SUPPORT OF REDFIN CORPORATION'S MOTION FOR SUMMARY JUDGMENT

---

**THE GOTTFRIED FIRM**
Counsel for *Amicus Curiae*
National Association of REALTORS®
David M. Gottfried
State Bar of Texas No. 08231200
Meghan Alexander
State Bar of Texas No. 24053960
1505 West Sixth Street
Austin, Texas 78703
Telephone: (512) 494-1481
david.gottfried@thegottfriedfirm.com
meghan.alexander@thegottfriedfirm.com

**July 5, 2016**

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS**     **2**

**TABLE OF AUTHORITIES**     **3**

**INTEREST OF *AMICUS CURIAE***     **4**

**ARGUMENT**     **5**

**I.    THIS COURT SHOULD ADDRESS THE APPLICABILITY OF THE DMCA TO AVOID UNCERTAINTY THAT WOULD HARM CONSUMERS AND REAL ESTATE PROFESSIONALS**     **5**

**II.    THE DMCA SAFE HARBOR APPLIES TO WEBSITES OPERATED BY REAL ESTATE PROFESSIONALS WHO DISPLAY PROPERTY LISTING INFORMATION PROVIDED BY OTHERS FOR THE PURPOSE OF DISPLAY**     **7**

**A.  Real estate professionals operating websites displaying property listing information are "service providers" under the DMCA Safe Harbor.**     **7**

**B.  Photographs appearing on brokers' websites provided through an MLS are being stored at the direction of MLS users.**     **7**

**CONCLUSION**     **9**

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                          **Page**

*Avdeef v. Google, Inc.*, 2015 WL 5076877 (N.D. Texas, Aug. 26, 2015)          **6, 7, 9**

*Corbis v. Amazon.com*, 351 F.Supp.2d 1090, 1110 (W.D. Wash. 2004)             **9**

*CoStar Grp., Inc. v. Loopnet, Inc.* 373 F.3d 544, 555 (4th Cir. 2004)         **8**

*UMG Recordings, Inc. v. Veoh Networks, Inc.*, 718 F.3d 1006, 1020 (9th Cir. 2011)   **8, 9**

*Wolk v. Kodak Imaging Network, Inc.*, 840 F.Supp. 2d 724, 744 (S.D.N.Y. 2012)   **6, 9**


STATUTES

17 U.S.C. § 512(c) "DMCA Safe Harbor"                                          *passim*

17 U.S.C. § 512(k)(1)(B)                                                        **6, 7**


SECONDARY SOURCES

The Digital House Hunt: Consumer and Market Trends in Real Estate, A Joint Study
from The National Association of REALTORS® and Google                          **4**

***Interest of Amicus Curiae***[1]

*Amicus* NATIONAL ASSOCIATION OF REALTORS® ("NAR") submits this brief in support of Redfin Corporation's Motion for Summary Judgment urging the Court to rule on the important issue of whether the safe harbor of the Digital Millennium Copyright Act under 17 U.S.C. § 512(c) ("DMCA Safe Harbor") applies to Defendant Redfin Corporation ("Redfin").

NAR is a national nonprofit professional association that represents one million persons engaged in all phases of the real estate business, including, but not limited to, brokerage, appraisal, management, and counseling. NAR represents the interests of real estate professionals and real property owners in important matters before the legislatures, courts, and administrative agencies of the federal and state governments. NAR's interest in this case arises from its interest in promoting ready and convenient accessibility for consumers to real property information while at the same time avoiding or limiting the risk to real estate professionals, including NAR members, in making such information available.

---

[1] Pursuant to Federal Rule of Civil Procedure 29(c), NAR hereby represents that no counsel for a party authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.

I.   **THIS COURT SHOULD ADDRESS THE APPLICABILITY OF THE DMCA TO AVOID UNCERTAINTY THAT WOULD HARM CONSUMERS AND REAL ESTATE PROFESSIONALS.**

The real estate industry is fueled by property listing content. Sellers want attractive marketing that highlights their properties' worth and character. Buyers are increasingly relying on the Internet to conduct real property searches as approximately ninety percent of home buyers today rely on the internet as a primary research source[2]. Displaying photographs of real properties online is now a vital part of the real estate professional's marketing plan.

Property owners interested in selling their property contract with real estate practitioners, acting as "listing brokers," to assist in marketing the property for sale, including distribution of information about the nature, characteristics, and features of the property.  The information collected and distributed generally includes photographs of the property for sale.  Listing brokers submit that property information to a "multiple listing service" (MLS) for distribution and availability to other real estate professionals working with buyers who may be interested in such properties. By participating in an MLS and submitting property listing information about properties for sale to the MLS, brokers authorize the MLS to make that information available to other brokers for public display on brokerage websites operated by other MLS participants. Public display of such property listing information allows consumers to conveniently search for properties of interest, learn relevant information related to such properties and their market areas, and identify a real estate professional who can assist them through the transaction process.

A substantial number of real estate professionals participate in MLSs. As a result, there are hundreds of thousands of real estate brokerage websites that include property listing information, including photographs, provided by other broker MLS participants for display.

_____
[2] The Digital House Hunt: Consumer and Market Trends in Real Estate, A Joint Study from The National Association of REALTORS® and Google.

These brokerage websites include millions of real property photographs available for viewing by consumers on the Internet. While this presents a huge benefit to consumers, it also presents an enormous risk of copyright infringement to the real estate practitioners operating brokerage websites, since they have no reasonable opportunity or capacity to determine whether the photographs submitted to the MLS and made available by other brokers for display may be infringing.

NAR has advised its members that they may reduce their risk of copyright infringement for photographs or other material provided by other brokers for display on their websites through the MLS by complying with the safe harbor provisions of the Digital Millennium Copyright Act, specifically, 17 U.S.C. § 512(c). To the extent that this Court were to conclude that the safe harbor does not apply, brokers are likely to become far more unwilling to display content provided to the MLS for display by others, to the substantial detriment of consumers who seek and presently have, convenient and ready access to such property information via websites operated by brokers.

Accordingly, NAR urges this Court to address and confirm the applicability of the DMCA Safe Harbor to broker websites that include photographs and other property listing content provided by others through the MLS. Specifically, NAR urges this Court to decide on summary judgment that Redfin is a service provider that hosts a website on which content is stored at the direction of third-party users, and thus may be entitled to protection of the DMCA Safe Harbor, if they satisfy the other criteria of such safe harbor. Such a decision will inform the actions of other MLS users who display property listing photographs on their brokerage websites in reliance on the DMCA Safe Harbor protection.

## II. THE DMCA SAFE HARBOR APPLIES TO WEBSITES OPERATED BY REAL ESTATE PROFESSIONALS WHO DISPLAY PROPERTY LISTING INFORMATION PROVIDED BY OTHERS FOR THE PURPOSE OF DISPLAY

### A. Real estate professionals operating websites displaying property listing information are "service providers" under the DMCA Safe Harbor.

The DMCA Safe Harbor applies to "service providers", which "means a provider of online services or network access, or the operator of facilities therefor." *See* 17 U.S.C. § 512(k)(1)(B). Real estate professionals who control or operate websites that display property listing information provided by other brokers are providing online services within the meaning of the DMCA Safe Harbor. *Avdeef v. Google, Inc.*, 2015 WL 5076877 (N.D. Texas, Aug. 26, 2015) (finding that the safe harbor provision of the DMCA applied to Google where Google displayed content at the direction of and pursuant to a license with Lulu, a self-publishing company acting on behalf of and with authorization by Lulu's users.); *Wolk v. Kodak Imaging Network, Inc.*, 840 F.Supp. 2d 724, 744 (S.D.N.Y. 2012) ("Because [Defendant] offers a site that hosts and allows online sharing of photographs and videos at the direction of users, [Defendant], like YouTube.com or Veoh.com, qualifies as a "service provider" under § 512(k)(1)(B).").

### B. Photographs appearing on brokers' websites provided through an MLS are being stored at the direction of MLS users.

The DMCA Safe Harbor applies to copyright infringement claims based on allegedly infringing display of content "stor[ed] at the direction of a user." 17 U.S.C. § 512(c). As discussed above, real estate brokers provide photographs and other property listing information to an MLS, thereby authorizing the MLS to deliver that content to other brokers for use and display on websites controlled and operated by such other brokers. Like the Lulu users in *Google* directed Lulu to send their content to Google for display, brokers who are MLS users direct the MLS to send their photographs for display on websites controlled or operated by other

brokers/MLS users. *Google*, 2015 WL 5076877, *3 ("Plaintiff's lawsuit arises out of the storage of copyrighted material on a system or network controlled or operated by Google. The information was stored at the direction of Lulu, acting on behalf of plaintiff and with his authorization.").

Furthermore, the process of receiving from the MLS and displaying other brokers' property listing information is automatic and involves little or no supervision or modification of the photographs by the MLS users receiving the feed. The MLS data feed is merely recast in a format that makes the property information readily accessible on individual brokers' websites for view by consumers. Only the MLS user who generated the property listing and uploaded the listing photographs to the MLS has the ability to determine whether or not that listing or those photographs will be included in the display. The MLS users receiving the data feed have no control over the photographs appearing on their websites that they did not originally generate or upload to the MLS. The MLS users, by linking to the MLS, merely receive the original feeds and automatically receive any updates submitted by the original user who generated the listing in MLS.

Applying the DMCA Safe Harbor to websites operated by MLS users that display other MLS user's property listing content, including photos, is wholly consistent with the meaning and intent of the DMCA Safe Harbor requirement that the copyrighted content be stored on a service provider's system at the behest and direction of someone using the website for its purposes – that is, a user. *See UMG Recordings, Inc. v. Veoh Networks, Inc.*, 718 F.3d 1006, 1020 (9th Cir. 2011) (finding that the service provider satisfied the DMCA safe harbor threshold requirement that the infringement be by reason of the storage at the direction of users of material residing on the service provider's system when the service provider "simply established a system whereby

software automatically processes user-submitted content and recasts it in a format that is readily accessible to its users" and "does not actively participate in or supervise file uploading" or "preview or select the files before the upload is complete."); *see also CoStar Grp., Inc. v. Loopnet, Inc.* 373 F.3d 544, 555 (4th Cir. 2004).

## III.   CONCLUSION

Innumerable real estate broker websites contain property listing information of great value to consumers, including millions of photographs. The brokers operating those websites, however, have no reasonable way to know whether such property listing information infringes a third-party's copyright, or whether the originating MLS user otherwise acted improperly in obtaining or providing that information to the MLS for distribution to and display by other brokers. In this case, Defendant Redfin, like other brokers operating property information websites, is a service provider and Plaintiff's photographs are stored on the Redfin website at the direction of Plaintiff, another user of the same MLS as Defendant Redfin. The Court should therefore hold on summary judgement that Redfin is a service provider that hosts a website on which content is stored at the direction of third-party users, and thus may be entitled to protection of the DMCA Safe Harbor (17 U.S.C. § 512(c)), provided that it satisfies the criteria of such safe harbor.  By extension, the best interests of an untold number of consumers and other brokers operating websites will be protected as well. *See Google,* at *3 (finding on summary judgment that Google is entitled to the benefit of the safe harbor provision) (*citing UMG Records; and Wolk v. Kodak Imaging Network, Inc.*, 840 P. Supp.2d 724, 745-46 (S.D.N.Y. 2012).*); Corbis v. Amazon.com*, 351 F.Supp.2d 1090, 1110 (W.D. Wash. 2004) (finding on summary judgment that Amazon has satisfied all of the threshold conditions for DMCA protection and, as a result, Amazon is immune from all monetary relief).

Dated: July 5, 2016

Respectfully submitted,

**THE GOTTFRIED FIRM**

By: _____ /s/David M. Gottfried
       David M. Gottfried
       State Bar of Texas No. 08231200
       Meghan Alexander
       State Bar of Texas No. 24053960
       1505 West Sixth Street
       Austin, Texas 78703
       Telephone: (512) 494-1481
       david.gottfried@thegottfriedfirm.com
       meghan.alexander@thegottfriedfirm.com
       **COUNSEL FOR *AMICUS CURIAE***
       **NATIONAL ASSOCIATION OF REALTORS®**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY THAT on July 5, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert Buckner McKinney
LAW OFFICE OF BUCK MCKINNEY, PC
P.O. Box 6231
Austin, TX 78762-6231
(512) 236-0150
Fax: 512/444-1879
Email: mckinney@buckmckinney.com

Christopher R. Osborn
Emily R. Kelly
Joel B. Ard
Kelly Ann Lennox
FOSTER PEPPER, PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101
206.447.8916
Fax: 206.749.1973
Email: osboc@foster.com
Email: kelle@foster.com
Email: joel.ard@foster.com
Email: lennk@foster.com

Bruce C. Morris
KANE RUSSELL COLEMAN & LOGAN PC
Galleria Tower II, 10th Floor
5051 Westheimer Road
Houston, TX 77056
713-425-7450
Email: bmorris@krcl.com

<u>/s/David M. Gottfried</u>
David M. Gottfried
