FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2016 SEP -6  AM 11: 36

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

ALEXANDER STROSS,
                    Plaintiff,

-vs-                                          CAUSE NO.:
                                              A-15-CA-00223-SS
REDFIN CORPORATION,
                    Defendant.

## O R D E R

BE IT REMEMBERED on the 15th day of August 2016, the Court held a hearing in the

above-styled cause, and the parties appeared by and through counsel. Before the Court are

Defendant Redfin Corporation (Redfin)'s First Motion for Summary Judgment [#30], Plaintiff

Alexander Stross (Stross)'s Response [#32] in opposition, Redfin's Reply [#37] in support, and

Stross's Surreply [#44] in opposition; Stross's First Motion for Partial Summary Judgment [#34],

Redfin's Response [#40] in opposition, and Stross's Reply [#46] in support; Redfin's Letter

Briefs [#89, 90, 95, 97]; Stross's Letter Briefs [#92, 93, 94, 98, 99]; Redfin's Motions for

Summary Judgment [#102, 103, 104] and its Exhibits [#105, 106, 108, 109, 116] in support;

Stross's Second Motion for Partial Summary Judgment [#107]; the National Association of

Realtors' Amicus Curiae Brief [#125]; and the Court's Orders of November 12, 2015 [#54] and

July 5, 2016 [#118] denying the parties' motions for summary judgment.[1] Having reviewed the

---

[1] On November 12, 2015, and again on July 5, 2016, the Court denied the parties' motions for summary judgment. But "because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *rev'd on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1996). The Court therefore exercises its right to reconsider its previous interlocutory orders denying the parties' motions for summary judgment.

documents, the governing law, the arguments of the parties at the hearing, and the file as a whole, the Court now enters the following opinion and orders.

## Background

This case involves a claim for copyright infringement. Plaintiff Alexander Stross is an architectural photographer and a licensed real estate broker in the state of Texas. Real estate agents and brokers often participate in "multiple listing services" (MLS) as a forum for posting real estate listings to facilitate the sale, lease, and valuation of real property. For Austin and the surrounding area, the MLS is owned and operated by the Austin Board of Realtors (ABOR) through its wholly-owned subsidiary Austin-Central Texas Realty Information Services (ACTRIS).

To participate in ACTRIS's MLS, an ABOR member must submit a Participant Content Access Agreement (PCAA). Def.'s First Mot. Summ. J. [#30-5] Ex. D (PCAA) at 29–35. The PCAA incorporates the ACTRIS Rules and forms a binding legal agreement between ACTRIS and the participant. *Id.* at 29; Pl.'s Mot. Summ. J. [#107-1] Ex. C (ACTRIS Rules) at 21–63. Both Stross and Defendant Redfin Corporation, an online real estate brokerage company, signed separate PCAA (Stross PCAA and Redfin PCAA, respectively), and are thus participants in ACTRIS's MLS system. It is through this connection the instant dispute arises.

Stross alleges Redfin used over 1,800 of Stross's registered architectural photographs taken of 116 houses in Austin, Texas, in violation of Stross's copyright. As an ACTRIS participant, Redfin is subject to the ACTRIS Rules. The ACTRIS Rules circumscribe a participant's use of the MLS's uploaded content (MLS Compilation). For example:

> Section 7.3 states a participant may display "sold" data only "to support an estimate of value on a particular property for a particular client."

Section 7.6 prohibits a participant from "recommercializ[ing]" MLS content, or deriving any economic benefit from the utilization, transmission, retransmission or repackaging of same.

Section 9.24 prohibits a participant from displaying more than 100 sold listings in response to a consumer inquiry.

ACTRIS Rules §§ 7.3, 7.6, 9.24.

Stross contends Redfin violated the ACTRIS Rules by (1) using Stross's photographs of sold listings for purposes other than "to support an estimate of value on a particular property for a particular client," and (2) by redistributing and recommercializing Stross's photographs by encouraging customers to "share" Stross's photographs via social media. Pl.'s Second Mot. Summ. J. [#107] at 5–6.

Redfin asserts two affirmative defenses: (1) it was licensed to use the photographs as it did, and (2) the Digital Millennium Copyright Act (DMCA) safe harbor provisions shield Redfin from liability for infringement. As to Redfin's first defense, Redfin maintains Stross, by signing the Stross PCAA, granted ACTRIS and its licensees a broad license to use the photographs at issue. Section 7.10 of the ACTRIS Rules states:

> By the act of submission of any Listing Content to ACTRIS or into the MLS Compilation, the Participant and/or Subscriber . . . thereby does grant, ACTRIS (and its service providers and *licensees*) an irrevocable, worldwide, paid-up, royalty-free, right and license to include the Listing Content in the MLS Compilation, any statistical report or comparables, and to use, copy and create derivative works of it and authorize its use, copying and creation of derivative works *for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other uses*; provided that with respect to such other use, the Participant has not opted-out of such other use after notice of the same.

ACTRIS Rule § 7.10 (emphasis added). Redfin argues it is a licensee under this rule, and therefore was granted the right to use Stross's photographs "for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other uses."

3

As to Redfin's second defense, Redfin contends Stross cannot recover monetary or injunctive relief because the safe harbor provisions of the DMCA shield Redfin from liability for copyright infringement. *See* 17 U.S.C. § 512(c).

Redfin has moved for summary judgment on both of its affirmative defenses, and Stross has moved for summary judgment on the license issue. The Court, having previously denied the parties' first and second cross-motions for summary judgment, now reconsiders those Orders.

## Analysis

### I.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at

4

586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

When both parties move for summary judgment, the Court reviews the motions independently of each other, viewing the evidence in the light most favorable to the non-moving party with respect to each motion. *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004); *Courtland Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 395 F. Supp. 2d 478, 480 (S.D. Tex. 2005).

## II.    Application

The parties' motions for summary judgment raise two primary issues for the Court's resolution: (1) whether Stross has standing to sue Redfin for alleged violations of the ACTRIS

Rules, and (2) if Stross has standing, whether the safe harbor provisions of the DMCA shield Redfin from liability for copyright infringement. Because the Court determines Redfin did not exceed the scope of its license, it GRANTS Redfin's motion for summary judgment on this issue.[2]

## A.    License

To establish copyright infringement, a plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying a constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The defendant bears the burden of establishing the affirmative defense that a license existed authorizing his use of the copyrighted material. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997).

The gravamen of the parties' dispute is whether Stross has standing to sue Redfin for its alleged violations of the ACTRIS Rules.

### i.    Redfin's "Narrow" License

It is undisputed Stross uploaded his photographs to ACTRIS and thereby agreed to the ACTRIS Rules.[3] Section 7.10 of the ACTRIS Rules provides:

---

[2] The Court therefore does not reach Redfin's alternative argument that the safe harbor provisions of the DMCA shield it from liability for infringement. Nevertheless, from its comprehensive review of the record, the Court finds this argument persuasive.

[3] Although neither party has produced the Stross PCAA granting Stross access to ACTRIS's MLS, Stross admits he signed a PCAA. *See* Pl.'s First Mot. Summ. J. [#32] at 5 ("The license provision upon which Redfin relies [to argue Stross granted Redfin a broad license] is contained in the ACTRIS Rules – which are incorporated in their entirety into, and made part of, Plaintiff's Applicant Agreement with ACTRIS."). By signing a PCAA, Stross expressly agreed to license his photographs to ACTRIS under Section 7.10.

The fact that roughly half of the photographs at issue were uploaded by third-party brokers does not change the Court's analysis, as it is clear Stross licensed—at least impliedly—these brokers to upload his photographs to the MLS Compilation. *See, e.g.*, Def.'s Exhibits [#105-12] Ex. J (Third-Party Broker Invoice) at 15–19 (describing licensing terms as "[o]n market MLS only and according to MLS rules regarding sales comparibles"). Of the five third-party brokers who were deposed, none of them understood the language printed on Stross's invoice as limiting their use of the photographs, nor do they recall Stross ever orally limiting their use of his photographs in any way. *See id.* [#105-7] Ex. E (Chris Long Dep.) at 26:15–18; *id.* [#105-8] Ex. F (Ken Doocy Dep.) at 25:17–29:22; *id.* [#105-9] Ex. G (Jacquelyn Krenek Dep.) at 37:24–38:7; *id.* [#105-10] Ex. H (Jon Luce Dep.) at 30:21–25; *id.* [#105-11] Ex. I (Jennifer Mehis Dep.) at 34:11–18. Indeed, if the use of Stross's photographs were as limited as Stross

> By the act of submission of any Listing Content to ACTRIS or into the MLS Compilation, the Participant and/or Subscriber . . . thereby does grant, ACTRIS (and its service providers and *licensees*) an irrevocable, worldwide, paid-up, royalty-free, right and license to include the Listing Content in the MLS Compilation, any statistical report or comparables, and to use, copy and create derivative works of it and authorize its use, copying and creation of derivative works *for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other uses*; provided that with respect to such other use, the Participant has not opted-out of such other use after notice of the same.

ACTRIS Rule § 7.10 (emphasis added).

Based on this language, the parties agree Stross granted ACTRIS a "broad" license to use his photographs "for any purpose consistent with the facilitation of the sale, lease, and valuation of real property or such other uses." *See id.*; Pl.'s First Mot. Summ. J. [#32] at 4 ("Plaintiff alleges that he licensed his photographs 'to ACTRIS' pursuant to Section 7.10."); Pl.'s Brief [#92] ("With respect to the Stross Listings, by the act of submission into the ACTRIS MLS, Plaintiff licensed to ACTRIS the right to use the photographs 'for any purpose consistent with [the facilitation of] the sale, lease [and] valuation of real property.'"); Def.'s Mot. Summ. J. [#103] at 8 ("Tendering photographs to ACTRIS requires ACTRIS participants to grant the broad license in [Section] 7.10.").

Like Stross, Redfin also signed a PCAA, which represents a binding agreement between Redfin and ACTRIS.[4] Under the Redfin PCAA, ACTRIS granted Redfin "a non-exclusive,

---

alleges, third-party brokers would not have hired Stross to take photos in the first place. *See* Chris Long Dep. at 27:11–16; Ken Doocy Dep. at 43:23-44:18; Jon Luce Dep. at 32:1–10.

    In situations where the scope of the license is ambiguous, courts may imply a license based on the parties' conduct. *See, e.g., Lulirama Ltd., Inc.*, 128 F.3d at 879–80; *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 500 (5th Cir. 2012). In this case, the Court finds an implied license existed under which the third-party brokers could upload Stross's photographs to the MLS Compilation. As with the photographs Stross uploaded directly to the MLS Compilation, Section 7.10 defines the scope of this license, and grants ACTRIS the right to use these photographs "for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other uses."

    [4] Stross maintains he is entitled to a judgment of copyright infringement for Redfin's use of Stross's photographs prior to April 18, 2012, because the only PCAA Redfin produced is dated April 18, 2012. According to Stross, because Redfin has failed to produce a PCAA covering any period prior to April 18, 2012, Redfin's defense of license for that period must fail.

limited-term, revocable license . . . to make copies of, display, perform, and make derivative works of the ACTRIS Content specified in certain attachments referencing this Agreement." PCAA at 29. This license is expressly "[s]ubject to [Redfin's] compliance with the terms of this Agreement and ACTRIS Policies." *Id.* ("[Redfin] shall comply with ACTRIS Policies at all times.").

Based on this language, the parties also agree ACTRIS granted Redfin a "narrow" license: Redfin may only use the MLS Compilation—including Stross's photographs—in accordance with the ACTRIS Rules. *See* Pl.'s First Mot. Summ. J. [#32] at 4 ("In accordance with Section 7.10, ACTRIS authorized Redfin to make limited use and display of ACTRIS content – including Plaintiff's photographs – subject to the restrictions contained in the ACTRIS Rules."); Def.'s Mot. Summ. J. [#103] at 7. Accordingly, although ACTRIS may have a broad license to use his photographs for "any purpose consistent with the facilitation of the sale, lease and valuation of real property," Redfin's use is limited by various ACTRIS Rules which curtail a participant's use of the MLS Compilation. *See, e.g.*, ACTRIS Rules §§ 7.3, 7.6 9.24.

Stross contends Redfin exceeded the scope of its narrow license by violating the ACTRIS Rules, and in turn infringed his copyright. Stross's argument proceeds in three steps. First, pursuant to Section 7.10, Stross licensed his photographs to ACTRIS to use "for any purpose

---

However, Redfin has produced evidence indicating it signed the Redfin PCAA in October 2010 when Redfin began using ACTRIS. Beth Gatlin, the Director of Member Services at ABOR who managed ACTRIS's MLS from October 1997 until June 2015, testified a participant cannot "receive a data feed from ACTRIS for authorized display on its website without first signing a PCAA." Beth Gatlin Decl. [#108] ¶ 6. Indeed, the ACTRIS Rules expressly state "[u]se of the MLS . . . is conditioned or in agreement and compliance with these [ACTRIS] Rules and the Terms and Conditions included on the Internet where the MLS . . . may be accessed." ACTRIS Rules at 28. Stross even admits as much in one of his many letter briefs to the Court: "like all ACTRIS Participants – in order to receive any information from ACTRIS (including [Stross's] photographs) – [Redfin] was required to enter into a [PCAA]." Pl.'s Letter Brief [#92] at 2. Gatlin testified Redfin was granted access to the ACTRIS database in October 2010. Beth Gatlin Decl. [#108] ¶ 7. Based on the weight of the summary judgment evidence, the Court concludes Redfin entered into an agreement with ACTRIS in October 2010. Accordingly, even assuming Redfin's use exceeded the scope of the narrow license ACTRIS granted it under the Redfin PCAA during this time period, Stross, a non-party to the Redfin PCAA, has no standing to sue based on these alleged violations. *See infra* Section II.A.i.

consistent with the facilitation of the sale, lease and valuation of real property or such other uses." *See* Pl.'s Resp. [#32] at 4. Second, under the Redfin PCAA, ACTRIS authorized Redfin to make limited use and display of the MLS Compilation—including Stross's photographs—subject to the restrictions contained in the ACTRIS Rules. *Id.* Third, because ACTRIS granted Redfin a narrow license subject to Redfin's compliance with the ACTRIS Rules, Stross may sue Redfin for Redfin's alleged violations of the ACTRIS Rules. *Id.*

The last step in Stross's argument contains an incurable error, as it conflates two distinct documents: the Stross PCAA and the Redfin PCAA. Stross is not a party to the Redfin PCAA, nor has he shown he is a third-party beneficiary of that contract. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, no pet.) ("In order to establish standing to maintain a breach of contract action, a plaintiff must show either third-party beneficiary status or privity."). In fact, by arguing Redfin—as an ACTRIS participant—is not a third-party beneficiary of the Stross PCAA, Stross circuitously admits he is not a third-party beneficiary of the Redfin PCAA. *See* Resp. [#32] at 5. Stross therefore lacks standing to sue based on any alleged violation of the narrow license ACTRIS granted Redfin in the Redfin PCAA.

Stross argues such an interpretation leads to an absurd result, because if the only license Stross is entitled to enforce is the broad license granted under Section 7.10, then a future broker would never need to photograph a previously sold home. *See* Resp. [#32] at 8. Instead, he could simply use the photographs bought and paid for by the prior listing broker. *Id.* In making this argument, however, Stross ignores Chapters 10 and 11 of the ACTRIS Rules. *See* ACTRIS Rules at 55–62. Under these Chapters, any participant—including Stross—may report alleged violations of the rules to ACTRIS. *Id.* at 55. In fact, Section 7.2 requires participants to report

such violations. *See id.* at 41 ("Any Participant . . . shall promptly notify ACTRIS if he or she believes that any use by a Participant . . . is inconsistent" with the ACTRIS Rules). Once a violation has been reported, ACTRIS may discipline the alleged violator by imposing monetary fines, suspending or terminating its MLS rights, or ultimately initiating legal action against the alleged violator. *Id.* at 56. Thus, a participant may seek to have the ACTRIS Rules enforced, just not in federal court. That Stross chose not to avail himself of established ACTRIS remedies does not make the proper interpretation absurd.

### ii.    Redfin's "Broad" License

The Court's conclusion that Stross does not have standing to sue under the Redfin PCAA does not turn on whether Redfin is a "licensee" under Section 7.10. Were the Court to consider Redfin a "licensee" under Section 7.10, however, Stross could argue he has standing to sue Redfin for any alleged violations of the broad license grant under Section 7.10. Under this interpretation of Section 7.10, Stross would have granted both ACTRIS and Redfin a broad license to use the uploaded content in the MLS Compilation "for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other use." ACTRIS Rule § 7.10. Stross therefore would be entitled to sue Redfin, as a licensee, for violating the Stross PCAA by using his photographs for purposes other than to facilitate the "sale, lease and valuation of real property or such other use." Indeed, this is the argument Redfin propounds. It argues this two-part licensing structure—where ACTRIS's licensees, i.e. participants such as Redfin, are granted both a broad and narrow license to use the MLS Compilation—is essential for ACTRIS to "protect[] itself and its licensees from claims of infringement and/or misuse" and to "maintain[] control over the uses to which the data may be put."[5] Def.'s Mot. Summ. J. [#103]

---

[5] In making this argument, Redfin does not abandon its position that Stross has no standing to sue Redfin for any alleged violation of its narrow license, as Stross is not a party to the Redfin PCAA. Rather, Redfin's

at 8 (explaining if "ACTRIS secured no broader license than that suggested by [Stross], it either could never amend its Rules or could not assure brokerages that they could safely engage in any post-amendment use of the MLS data").

Regardless of the merit of this argument, Stross has maintained throughout this litigation that Redfin is not a licensee, because the ACTRIS Rules refer to Redfin—and all other members—as "[p]articipants," not licensees. *See* Resp. [#32] at 7–8; Pl.'s Brief [#94] at 2. Where the term "licensee" is used, Stross argues, the ACTRIS Rules mean independent contractors, which Redfin is not. *See* Resp. [#32] at 7–8. Given Stross's pronounced opposition to viewing Redfin as a "licensee," the Court is not inclined to entertain this argument in Stross's favor. Nevertheless, even assuming Redfin is a licensee under Section 7.10, Stross has failed to create a fact issue as to whether Redfin exceeded the broad license grant by using Stross's photographs for purposes other than to facilitate "the sale, lease and valuation of real property or such other use." ACTRIS Rule § 7.10.

By signing the Stross PCAA, Stross granted ACTRIS a broad license to use his photographs in conjunction with the "sale, lease and valuation of real estate or such other use." Stross retains his copyright for purposes other than those contemplated in Section 7.10. Were ACTRIS or its licensees to exceed this broad license, Stross could file a lawsuit alleging copyright infringement. For everything else, Stross is advised to tell it to ACTRIS, not the judge.

### Conclusion

Redfin's licensed use of Stross's photographs is a defense to Stross's allegation of direct infringement. With no direct infringement, Redfin has no secondary liability for encouraging its users to "share" Stross's photographs via social media. *See Metro-GoldwynMayer Studios Inc. v.*

---

argument regarding the two-part licensing structure is simply an extension of its previous argument, with which the Court agrees.

*Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement"); *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08-CV-1658-D, 2009 WL 3075205, at *15 (N.D. Tex. Sept. 25, 2009) (noting "a finding of contributory infringement is dependent upon the existence of an act of direct infringement"). As a result, the Court GRANTS Redfin's motion for summary judgment on the license issue and WITHDRAWS its previous Orders to the extent they conflict with this Order.

Accordingly,

IT IS ORDERED that the Court hereby WITHDRAWS IN PART its previous Orders [#54, 118] denying Redfin's motions for summary judgment based on the license issue; and

IT IS FINALLY ORDERED that Redfin's Motion for Summary Judgment [#103] is GRANTED.

SIGNED this the 2nd day of September 2016.

SAM SPARKS
UNITED STATES DISTRICT JUDGE