

July 9, 2018

**VIA ECF**

The Honorable Sam Sparks
U.S. District Court for the Western District of Texas
501 West 5th St., Suite 4120
Austin, Texas 78701

      Re:    <u>Alexander Stross v. Redfin Corporation / Cause No. 1:15-cv-00223-SS</u>

Dear Judge Sparks:

      This letter is in response to the Court's invitation to the parties to file a letter brief updating their arguments on the DMCA safe-harbor defense. (Doc. 177)

      Redfin's unusual DMCA theory—which contends that every ACTRIS member is indirectly also a "user" of Redfin's service by operation of the various rules and licenses—links the ultimate success of its DMCA defense to first proving the license. Redfin's motion acknowledges that link. (Doc. 102, at 4 & 8). That is reason enough to reject Redfin's request for summary judgment on the eve of trial because the Fifth Circuit held on this summary-judgment record that Redfin had not proven a license to these photographs extending back to October 2010, or that Redfin's license was broad enough to cover the alleged uses. (Doc. 164, at 11 & 15). Redfin cannot prove up its DMCA defense without first proving aspects of its license that require a trial.

**I.    Redfin Did Not Designate a DMCA Copyright Agent Prior to Infringement.**

      Compliance with the DMCA's designation-of-agent provision is prospective only, not retroactive.[1] The safe-harbor protection begins only once the service provider "has designated an agent" in two places: [1] "on its website in a location accessible to the public" and [2] "by providing to the Copyright Office" the contact information for that agent. 17 U.S.C. §512(c)(2).

      Stross sought partial summary judgment on this ground. (Doc. 107) Unlike some of the other elements of the safe-harbor defense, the designation of agent does not hinge on resolving Redfin's license, the ACTRIS Rules, or other disputed facts. The Court can decide this issue on the current record, grant partial summary judgment against Redfin's defense, and greatly simplify the trial.

---

[1] *Oppenheimer v. Allvoices, Inc.,* 2014 U.S. Dist. LEXIS 80320, at *16 (N.D. Cal. 2014); *Perfect 10, Inc. v. Yandex N.V.,* 2013 U.S. Dist. LEXIS 65802 at *16 (N.D. Cal. 2013).

The Honorable Sam Sparks
July 9, 2018
Page 2

**A. Redfin did not designate an agent before infringement.** In October 2010, Redfin's technical staff conducted a bulk download from ACTRIS and an official post credited to the company's CEO bragged that, for Austin, its website then showed "all the photos of all the past sales." (Doc. 44-1, at 3; Doc. 107-1, at 75) Redfin does not even suggest that it designated an agent before that time. Its motion relies on website terms dated September 25, 2014. (Doc. 102, citing Doc. 30-5, at 10) Those terms have a section naming "our Copyright Agent" as being the "Redfin Legal Department." (Doc. 30-5, at 14). But Redfin did not also provide this designation to the Copyright Office until August 19, 2016.[2] That is after *every* infringement in the live complaint.

**B. Redfin's reliance on the filings of third parties is legally and factually wrong.** The designation-of-agent requirement applies to "the service provider," demanding it "provid[e] to the Copyright Office" the contact information for its copyright agent. 17 U.S.C. §512(c)(2). The statute speaks of "the agent" being designated in both places; it does not allow a mismatched set. Beyond that legal problem, the text of both Redfin's terms and of the actual third-party filings confirm that these third parties are not being designated as the copyright agent for Redfin.

**1. The Redfin terms do not designate any third party as Redfin's agent.** Redfin's summary-judgment motions rely on DMCA filings by two distinct, local entities: MLS Long Island (MLSLI) and Northwest MLS (NWMLS). (Doc. 31-12 & 30-13). Each names a copyright agent for itself. But neither of those agents is shown as being *Redfin's copyright agent* on the Redfin website. The agent for MLSLI does not appear there at all. (Doc. 107-1, at 121) And the agent information for NWMLS appears within a set "disclaimers that apply to listings only from that particular data source." (Doc. 107-1, at 114). Redfin's website does not designate an official of NWMLS as being *Redfin's* copyright agent more generally.[3]

**2. The third-party designations also do not show Redfin as the service provider.** Tracking the statute, the official form has a field for the "Full Legal Name of Service Provider." Both third parties listed themselves, not Redfin. (Doc. 15-1, at 81 & 135) While the form has a blank for a service provider to list its business aliases ("Alternative Name(s) of Service Provider"), that is for aliases of the "service provider" already listed—not distinct legal entities. The Copyright Office does not allow distinct corporate entities to share a single filing.[4]

---

[2] That date is taken from a Redfin filing that was posted on the Copyright Office website. *See* Plaintiff's Advisory (Doc. 174), Ex. A.

[3] Redfin's motion relies on a pre-discovery affidavit from Teresa Miller. (Doc. 30-9) But at her eventual deposition, she agreed that this portion of Redfin's terms "would fairly point people to believe it was particular to each individual MLS." (Doc. 107-1, at 91)

[4] Stross's partial motion for summary judgment explains this argument. (Doc. 107, at 7-8) The Copyright Office has subsequently formalized its guidance to this same effect into formal rules. *See* 37 C.F.R. §201.38(b)(1)(i) ("separate legal entities … each must have [their] own separate designation"); *id.* §201.38(b)(2) ("Separate legal entities are not considered alternate names.").

The Honorable Sam Sparks
July 9, 2018
Page 3

## II. Redfin Has Not Established the Other DMCA Elements.

The classic example of a service provider that fits the DMCA model is a website that hosts user-submitted content. The DMCA offers those websites protection from liability for their own copyright infringement "by reason of" the storage of materials "at the direction of a user," 17 U.S.C. §512(c), if they comply with the strict requirements of the statute.[5] But Redfin is not a classic service provider website. Redfin does not host user content. Redfin hosts MLS content that it affirmatively collects from ACTRIS.

**1. Redfin's theory depends on license.** Redfin's unusual DMCA theory is intertwined with the license issues. (#102, at 4) Redfin depends on that license to argue that MLS members are its "users" and the scope of that license to argue that its actions were "at the direction of a user." Without that, it cannot prevail.

**2. Merely having a license is not a user directive under the DMCA.** A provider having arguable *permission* to download certain material, if it so chooses, is very different than it responding to a *user directive* to store or display that material. The DMCA applies only to "infringement of copyright *by reason* of the storage *at the direction of a user* of material [on the service provider's system]." 17 U.S.C. §512(c) (emphasis added). These photographs were not uploaded to Redfin by "users." The import and storage of these materials, in bulk, was directed by Redfin technical staff. (Doc. 106, at 2¶9). This is the *factual* opposite of an individual user clicking an "upload" button for a photograph. Redfin made a self-directed business decision to download the ACTRIS photographs to its servers, in bulk, for display on its own website.[6]

**3. The policy concerns of amicus National Association of Realtors (NAR)** (Doc. 125) are better addressed by improving the various contracts entered into among real-estate professionals, so that they better protect copyright. The DMCA should not be twisted by stretching the concept of a "service provider." Doing so would effectively destroy millions of existing copyrights.

**4. Redfin has the "right and ability" to control its own profit-seeking infringing uses.** It took affirmative steps to: (1) exploit photographs from "sold" listings; (2) add sharing buttons to copy and republish photographs onto other websites; and (3) build and deploy the "Collections" platform. Those are plainly Redfin's choices, within its "right and ability" to control. 11 U.S.C. §512(c)(1)(B). And as described in Stross's motion, Redfin did financially benefit. (Doc. 107, at 10) Redfin has made the curious argument that its business choices, which appear to be unique

---

[5] These protections include making certain formal designations, helping to police copyright through a notice-and-takedown process, and applying a meaningful policy to terminate any repeat infringers. See 17 U.S.C. §512(c).

[6] "[S]ervice providers lose protection for activities they undertake that lack a causal connection to user-initiated storage of infringing material." *BWP Media USA, Inc. v. Clarity Digital Grp.*, 2015 U.S. Dist. LEXIS 42211 at *20 (D. Colo. Mar. 31, 2015); *see also* H.R. Rep. No. 105-551, p. 53 ("Information that resides on the system or network operated by or for the service provider through its own acts or decisions and not at the direction of a user does not fall within the liability limitation of [Section 512(c)].").

The Honorable Sam Sparks
July 9, 2018
Page 4

among ACTRIS members, were not merely permitted but compelled by the ACTRIS Rules. Setting aside the argument's implausibility, it hinges on license issues that have not been tried.

**5. Repeat-infringer policy.** The DMCA only protects service providers that are truly willing to adopt, implement, and inform subscribers that their access will be terminated if they are repeat infringers. 17 U.S.C. §512(i)(1)(A). Redfin's DMCA theory is that MLS entities—with whom Redfin has negotiated individual contracts—are thereby participating in "[Redfin's] system or network." *Id.* Thus, for Redfin to truly stand in the neutral middle ground required of a DMCA "service provider," it must have adopted, implemented, and notified its MLS subscribers of a policy to terminate *them* for repeat infringement. For obvious business reasons, Redfin has not.

Redfin's motion ignores those crucial subscribers, focusing only on website visitors. But Redfin also has no written policy for them, and offers no evidence that it adopted, implemented, or notified them of any repeat-infringer policy. Redfin argues that it can simply wait to receive copyright complaints and formulate the details of some policy later. (Doc. 102, at 13) But it is plainly not enough that Redfin *might* someday formulate a compliant repeat-infringer policy.[7] The DMCA makes doing so one of the explicit "Conditions for Eligibility." 17 U.S.C. §512(i).

Sincerely,

*/s/ R. Buck. McKinney*

R. Buck McKinney
**State Bar No.: 00784572**
mckinney@buckmckinney.com
*Counsel for Plaintiff Alexander Stross*

cc:
Robert S. Mahler
bob.mahler@polsinelli.com
Michael Logan
mlogan@krcl.com
Adrienne McKelvey
adrienne.mckelvey@polsinelli.com
Chip Morris
BMorris@krcl.com
Joel Rothman
joel.rothman@sriplaw.com

---

[7] Indeed, under the Court's discovery rulings, Redfin should not be able to offer trial evidence about its internal adoption or implementation of any supposed *unwritten* policy that is based, directly or indirectly, on legal advice. (Doc. 123) (stipulation); (Doc. 118) (order).