

July 9, 2018

Honorable Sam Sparks
Filed via CM/ECF

      **Re:**    *Alexander Stross v. Redfin Corporation*, **Case No. 1:15-cv-00223-SS**

Dear Judge Sparks:

    This letter is in response to the Court's Order (Dkt. No. 177), inviting supplemental briefing regarding Defendant Redfin Corporation's entitlement to safe harbor under the Digital Millennium Copyright Act (the "Act" or "DMCA"). The safe harbor provides online service providers immunity from monetary liability based on allegedly infringing activities so long as they follow certain "notice and takedown" procedures. *See* 17 U.S.C. § 512 *et seq.* This Court previously found Redfin's DMCA defense "persuasive," Dkt. No. 130 at 6 n.2, and Redfin's entitlement to this defense is endorsed by the Austin/Central Texas Realty Information Service ("ACTRIS") and the National Association of Realtors ("NAR"), **Exhibit 1** (letter to the Court from ACTRIS and NAR). As set forth in detail in Redfin's prior briefing (Dkt. Nos. 30, 89, 102), and for the reasons set forth herein, the Court should grant Redfin's motion for summary judgment that it is entitled to the DMCA safe harbor (Dkt. No. 102) and deny Plaintiff's counter cross motion (Dkt. No. 107). Granting the motion will dispose of all the issues in the case.

## FACTUAL BACKGROUND

    Plaintiff Alexander Stross is a real estate agent and photographer who took photographs for use in connection with real estate listings. Stross, or the brokers or agents to whom he sold or gifted his photographs, then uploaded these property listings to the Austin MLS database called ACTRIS. ACTRIS sends its MLS feed containing the user-submitted listing content to ACTRIS broker-members, including Redfin, which receive the content as it is submitted by the original ACTRIS user, and makes it available via its website and mobile applications. Dkt. No. 119-1.

    Stross claims that he first became aware in 2003 that sold listings containing his photographs were on Redfin's virtual office website ("VOW"). Dkt. No. 55 at 8. Although Stross, not Redfin, was in the unique position to know which of his photographs was uploaded to ACTRIS and which of those photographs he believed was being infringed, he chose not to notify Redfin or ACTRIS of the suspected infringement. Instead, he called his lawyer. And then he waited. **Exhibit 2**, Stross Dep. 92:15–93:8, Apr. 20, 2016. Two years later, without ever attempting to notify Redfin or ACTRIS of the alleged infringement, Stross filed suit against Redfin, asserting claims for direct and contributory infringement of the photographs. *See id.*; Dkt. No. 1. Consistent with the DMCA, Redfin immediately and expeditiously removed from its website each photograph identified by Stross, without regard to the validity of Stross' claimed infringement. It is in exactly these circumstances that the DMCA safe harbor applies and provides that Redfin is entitled to immunity.

## ARGUMENT

The DMCA safe harbor provides online service providers that store content at the direction of users, like Redfin, with complete immunity for any alleged infringement, so long as certain elements are met. DMCA safe harbor immunity is appropriate where: "(1) the provider lacks knowledge of the infringement, (2) does not receive direct financial benefits from the storage, (3) 'acts expeditiously to remove, or disable access to,' the infringing material once learning of it, and (4) 'has designated an agent to receive notifications of claimed infringement[.]'" *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 442–43 (5th Cir.), *cert. denied*, 138 S. Ct. 236, 199 L. Ed. 2d 123 (2017) (quoting 17 U.S.C. § 512(c)). Redfin meets each requisite element.

### Redfin is an Online Service Provider

As a threshold matter, Redfin is undisputedly an online service provider that provides property listing information at the direction of users. *See* 17 U.S.C. § 512(c). Indeed, the DMCA defines "service provider" broadly. *See In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 658 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) (explaining that "service provider" under the DMCA "is defined so broadly that we have trouble imagining the existence of an online service that would not fall under the definitions").

As NAR makes clear in its amicus brief in support of Redfin, "Real estate professionals who control or operate a website that displays property listing information provided by other brokers are providing online services within the meaning of the DMCA Safe Harbor." Dkt. No. 119-1 at 7. As NAR describes, MLS participants who operate VOWs—like Redfin—automatically receive the MLS data feed for consumers—those who are buying or selling real estate. Dkt. No. 56-1 at 10, 13 (Redfin's Terms of Use, requiring registered users to "acknowledge that you're considering Redfin as your real estate agent," are "entering into a lawful consumer-broker relationship with Redfin," "and have a bona fide interest in the purchase, sale or lease of real estate on the Redfin website."). Redfin has no control over the photographs or other listing content it receives from ACTRIS. Rather, it simply receives the feed submitted by the original user who generated the MLS listing. Dkt. No. 119-1 at 7–8. In fact, receiving participants, like Redfin, are prohibited from making substantive alterations to the data. *See ACTRIS Rule 9.22*, Dkt. No. 56-1 at 70 ("A Participant shall not change any Listing Content that is displayed on a VOW from the content as it is provided in the MLS."). In other words, brokers and agents—like Stross and the brokers who use his photographs—upload listings to ACTRIS, which in turn pushes a massive amount of data to receiving brokers, including Redfin, via the ACTRIS data feed. That data remains substantively unaltered on Redfin's VOW.

Redfin does not, nor could it, investigate whether MLS data submitted by others contains potentially infringing material. The sheer quantity of data that is uploaded by brokers would make placing that burden on Redfin—or any other broker—an impossible task. *See* Dkt. No. 102 at 8–9 (showing that Redfin displays millions of listings containing over 500 million photographs). Further, without knowing the status of a photograph and its relationship to the listing broker (i.e., who took the photograph; if the photograph is copyrighted; if the photographer assigned rights to that photograph to the broker or someone else; or the terms, if any, of an applicable licensing agreement) Redfin—or any other broker—would have no way of knowing if a listing contained an infringing photograph. It is for this reason that the DMCA

July 9, 2018
Page 3

places the straightforward and minimal burden on the content owner to simply notify the service provider of the claimed infringement. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1022 (9th Cir. 2013) ("Copyright holders know precisely what materials they own, and are thus better able to efficiently identify infringing copies than service providers . . . , who cannot readily ascertain what material is copyrighted and what is not.").

### 1. Redfin Lacked Knowledge of the Alleged Infringement

It is undisputed that Redfin had a license from ACTRIS to publish the photographs about which Stross complains. Redfin does not believe that any of those photographs have been infringed by Redfin making them available on its website, and therefore, Redfin had no knowledge of any alleged infringement of the photos generally, or of any specific photos that Stross alleges were infringed. Stross half-heartedly counters that Redfin must have had "constructive knowledge" of the alleged infringement because, according to Stross, Redfin violated the ACTRIS Rules and, therefore, knew there was infringement. Dkt. No. 32 at 20.[1] Tellingly, however, Stross does not point to a single example of Redfin's knowledge of a specific act of infringement of his photographs prior to his filing of his complaint. *See generally id.* This deficiency is fatal to his argument.

In *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018), the Ninth Circuit addressed constructive or "red flag" knowledge in the context of the DMCA safe harbor. It explained that mere hosting of "material capable of copyright protection, with the general knowledge that the site could be used to share infringing material, is not enough to impute knowledge." *Id.* at 610. Likewise, a website host's mere "suspicion of infringement" is not sufficient to deny safe harbor protection, nor is it sufficient to show that the provider knows that at least some of the material on a website "must be infringing." *Id.* at 611. Rather, to lose safe harbor protection, "it must be *obvious* that the particular material *that is the subject of the claim* is infringing." *Id.* (emphasis added) (holding that in case involving uploaded videos to website, "the copyright owner must show knowledge, actual or red flag, for *the videos that infringe its copyright and are the subject of its claim*." (emphasis added)). Stross has made no effort to make this showing, nor could he, where he strategically chose not to notify Redfin of the suspected infringement until he filed his complaint. *See, e.g.*, *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1057 (9th Cir. 2017) ("A copyright holder's failure to notify the service provider of infringement through the notice and takedown procedure . . . strip[s] it of the most powerful evidence of [actual] knowledge." (internal quotation marks omitted)).

### 2. Redfin Received No Direct Financial Benefit from Plaintiff's Photographs

It is further undisputed that Redfin does not receive a direct financial benefit from the alleged infringement. *See* Dkt. Nos. 30 at 21, 102 at 12. Redfin is a brokerage that receives broker fees when a Redfin agent represents the real estate buyer or seller. Dkt. No. 30 at 21–22, 102 at 12. It does not charge subscribers fees to access its site, nor does it advertise third party goods or services. *Id.*

Stross argues that Redfin gains a direct financial benefit in the form of increased traffic to its website. *See* Dkt. No. 107 at 10. This is wrong. Beyond speculation that website traffic has

---

[1] Redfin vigorously denies that it violated any ACTRIS rule.

64423857.3

July 9, 2018
Page 4

some value, Stross presents no credible evidence to monetize that value or directly tie it to his photographs. Indeed, not one of the listings at issue was listed or sold by any Redfin broker. *See* **Exhibit 3**, Expert Report of Dr. Thomas Varner ¶ 38.[2] Thus, Stross' speculation aside, no evidence suggests that Redfin ever received a "direct financial benefit" from any of Stross' photos, much less from the alleged infringement of them. *See Motherless*, 885 F.3d at 613 ("Of course, the more pornography Motherless had, the more users it would attract, and more views would lead to more advertising revenue. The words "the" and "directly" in the statute, though, must mean that some revenue has to be distinctly attributable to the infringing material at issue. There is no evidence that Motherless made any money directly from the Ventura clips.").[3]

### 3. Redfin Expeditiously Removed the Allegedly Infringing Content

Stross does not dispute that after he filed his complaint and Redfin first learned of the alleged infringement, Redfin expeditiously removed each photograph he identified, thereby fulfilling the purpose of the DMCA and triggering the safe harbor. *See In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 776 (8th Cir. 2005) ("[A] specific purpose of the notification provision is to allow an [internet service provider], after notification, the opportunity to remove or disable access to infringing material and thereby protect itself from liability for copyright infringement."). This element is, therefore, established as a matter of law.

### 4. Redfin Properly Designated a Copyright Agent

The DMCA requires service providers to designate an agent to receive notification of the claimed acts of infringement and make available certain contact information about the designated agent on their websites "in a location accessible to the public." 17 U.S.C. § 512(c)(2). Redfin did so, first by designating Justin Haag of the NWMLS, and subsequently by designating its own legal department. *See* Dkt No. 102 at 14.

Stross attempts to avoid the applicability of the DMCA safe harbor by challenging Redfin's agent designation. According to Stross, a service provider may not "co-opt" the agent of a third party and Redfin's designation of the NWMLS as its copyright agent was deficient as a result. Dkt. No. 107 at 7–8. Stross' argument is unpersuasive for at least three reasons.

---

[2] Stross may try to argue that Redfin received a direct financial benefit because, for a brief period of time between 2010 and 2011, Redfin had a widget with Zillow that advertised mortgage rates for which Redfin would get a small fee. *See Brief of Appellant*, Case No. 17-50046 at 48 n.5 (5th Cir. May 24, 2017). But Stross presents no evidence that this widget was ever used related to a listing containing his photographs or that any third party's use of the widget would have been in any way related to the purported infringement of his photographs. To the contrary, one would expect clicks on a mortgage advertisement to be used in connection with the purchase of an *active* listing, which Stross concedes is not at issue in this case.

[3] Because Stross concedes that Redfin has a license from ACTRIS to display his photographs while a listing is active, the only basis for his infringement claim is his allegation that Redfin did not have a license to display photographs after a property has been sold. Even if he were correct, which he is not, Redfin makes no money off a property that has already been sold, and certainly makes no money from the display of photographs of sold properties. The information is provided to customers of Redfin solely so that they may make an informed valuation decision on property they are interested in selling or purchasing.

July 9, 2018
Page 5

First, NAR and ACTRIS squarely reject Stross' position. NAR and ACTRIS have submitted a letter brief to the Court in support of Redfin and establishing that at all times relevant in this litigation, it was a common and responsible practice for MLSs, including the NWLMS, to offer to act as the registered copyright agent for their members, like Redfin. *See* **Exhibit 1**. In short, Redfin designated an agent in exactly the way it was instructed.

Second, Stross' contention that Redfin's designation was deficient is legally unsupported. Stross cites to an out-of-circuit opinion, *BWP Media USA Inc. v. Hollywood Fan Sites LLC*, 115 F. Supp. 3d 397 (S.D.N.Y. 2015), to support this argument. *BWP Media* is not binding on this Court and it is easily distinguishable. In *BWP Media*, the U.S. District Court for the Southern District of New York held that the designation of a DMCA agent by a parent company did not extend to the company's subsidiary. There, "Fan Sites Org." attempted to rely on the designation of its parent company, "Hollywood Fan Sites." *Id.* at 402. But there was no mention of Fan Sites in Hollywood's designation. *Id.* The court reasoned, therefore, that Fan Sites could not enjoy safe harbor protection because the DMCA did "not contemplate that a service provider entity can be shielded by the safe harbor where that entity has no presence at all" in the U.S. Copyright Offices directory of service providers. *Id.* The court explained,"[i]t is implausible that parties attempting to find a provider's DMCA agent designation, using the USCO's database, are expected to have independent knowledge of the corporate structure of a particular service provider." *Id.* Unlike in *BWP Media*, Redfin is not simply relying on the NWMLS's copyright agent designation of itself. NWMLS designated that it was the agent *for Redfin*, and specifically identified Redfin in its filing. *See* Dkt. No. 56-1 at 111. Nothing in the DMCA prohibits one entity from designating another entity as its agent. *Cf.* Fed. Reg. 59233, 59234 (Nov. 3, 1998) (suggesting *parents and subsidiaries* should file separate designations).

Finally, any perceived deficiency in Redfin's agent designation should not prohibit Redfin from its entitlement to the safe harbor defense because any such defect was harmless. Stross was not unable to locate Redfin's copyright agent to notify it of the alleged infringement. He didn't even try. As one treatise explains, "even the failure to meet a threshold requirement [of the DMCA] should not be disabling if the failure was not material. For example, failure to designate an agent in a filing with the Copyright Office due to mistake or inadvertence should not disqualify a service provider from protection where the agent and his or her contact information is posted on the service provider's website, in a lawsuit where the copyright owner was aware of this fact and was not prejudiced by the lack of technical compliance." Ian C. Ballon, 1 *E-Commerce and Internet Law* § 4.12[1] n.59 (2017 update). Stross' failure to notify Redfin's agent of suspected infringement should preclude him from now challenging Redfin's agent designation. *See also Sadowski v. Internet Brands, Inc.*, 2018 WL 3219374 (C.D. Cal. Jun. 28, 2018) (permitting defendant to raise affirmative DMCA defense where defendant had failed to designate an agent at the time of the alleged infringement and plaintiff had failed to provide a DMCA notice).

## CONCLUSION

For all these reasons, even if Redfin were liable for infringement, Redfin is immune from any damages under the DMCA's safe harbor. The Court should grant its motion for summary judgment (Dkt. No. 102) and deny Plaintiff's cross motion (Dkt. No. 107) accordingly.

July 9, 2018
Page 6

        Sincerely,

        */s/ Robert S. Mahler*
        Robert S. Mahler (*pro hac vice*)
        Polsinelli PC
        1000 Second Avenue, Suite 3500
        Seattle, WA 98104
        Telephone: (206) 393-5412
        Email: bob.mahler@polsinelli.com

        */s/ Michael A. Logan*
        Michael A. Logan (Bar No. 12497500)
        Kane Russell Coleman & Logan PC
        1601 Elm Street, Suite 3700
        Dallas, TX 75201
        Telephone: (214) 777-4294
        Email: mlogan@krcl.com

        *Counsel for Defendant Redfin Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: */s/ Robert S. Mahler*
Robert S. Mahler (*pro hac vice*)
POLSINELLI PC
1000 Second Avenue, Suite 3500
Seattle, WA 98104
Telephone: (206) 393-5400
Facsimile: (206) 299-5518
Email: bob.mahler@polsinelli.com

64423857.3